# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TANYA RAE J.[1]**, | Case No. 6:23-cv-1000-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MARTIN O'MALLEY**, Commissioner of Social Security, | |
| Defendant. | |

Kevin S. Kerr, KERR ROBICHAUX & CARROLL LAW OFFICE, PO Box 14490, Portland, OR 97293. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Executive Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Allison Granger, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Tanya Rae J. (Plaintiff) seeks judicial review of the final decision of the Commissioner of

the Social Security Administration (Commissioner) denying her applications for Supplemental

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Security Income (SSI) and Disability Insurance Benefits (DIB). For the reasons discussed below, the Court affirms the decision of the Commissioner.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

In 2018, Plaintiff filed for DIB and SSI, alleging disability beginning July 31, 2014. AR 71. Those claims were denied administratively and by ALJ Robert F. Campbell. *See* AR 71-87. Plaintiff did not appeal the decision by ALJ Campbell.

Plaintiff protectively filed applications for SSI and DIB in January 2020,[2] initially alleging an onset date of October 26, 2019. AR 324-29. Plaintiff was born in 1974 and was 44 years old on the alleged onset date. AR 34. Plaintiff alleges that during the relevant period she was unable to work due to post-traumatic stress disorder (PTSD), memory issues, anxiety, night terrors, chronic pain, migraines, and back issues. AR 344, 350, 352, 355.

The agency denied Plaintiff's claims both initially and upon reconsideration. AR 15, 260-63. On July 20, 2021, Plaintiff requested a hearing before an ALJ. AR 278-79. Plaintiff and her attorney appeared for an online video hearing before ALJ Richard Geib on March 8, 2022. AR 44. At the administrative hearing, Plaintiff amended her alleged onset date to January 16, 2020. AR 48. On May 6, 2022, ALJ Geib issued a decision finding Plaintiff not disabled under sections 1614(a)(3)(A), 216(i), and 223(d) of the Social Security Act. AR 15-35. Plaintiff requested the Appeals Council review the ALJ's decision. AR 322. On May 5, 2023, the Appeals Council denied Plaintiff's request for review. AR 1. Accordingly, the ALJ's decision became the final agency decision from which Plaintiff now seeks review.

---

[2] The ALJ cites Plaintiff's application date for SSI and DIB as January 9, 2020, AR 15, but the applications in the record are dated January 17, 2020, for SSI, AR 324-25, and January 21 and 25, 2020, for DIB, AR 326-28. These date discrepancies are immaterial.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC).

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform

other work existing in significant numbers in the national economy, the claimant is not disabled.

*Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

## C.  The ALJ's Decision

As an initial determination for Plaintiff's DIB claim, the ALJ concluded that Plaintiff met

the insured status requirements of the Social Security Act through March 31, 2020. The ALJ then

engaged in the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since January 16, 2020, the amended alleged onset date. AR 19. At

step two, the ALJ found that Plaintiff had the following severe impairments: right knee status

post surgeries, left knee osteoarthritis and meniscus tear, right ankle calcaneal spur, obesity,

cervical spine degenerative disc disease, headaches, depression, anxiety, PTSD, and attention-

deficit/hyperactivity disorder. *Id*. At step three, the ALJ determined that none of the

impairments, either individually or in combination, met or medically equaled the severity of one

of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. AR 20.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform light

work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she could "stand and walk

[for] four hours," frequently push and pull, and occasionally operate foot controls with the right

lower extremity. AR 22-23. The ALJ found that Plaintiff also could "occasionally climb ramps

and stairs [but] never climb ladders, ropes, and scaffolds and can occasionally balance, stoop,

kneel, crouch, and crawl[.]" AR 23. Plaintiff would need to avoid concentrated exposure "to

fumes, odors, dusts, gases, and avoid all exposure to work hazards, such as dangerous moving

machinery and unprotected heights." *Id*. She could "occasionally reach overhead bilaterally[] and

[could] perform simple routine tasks and [could] have occasional contact with the public and

coworkers." *Id*.

At step four, the ALJ found that Plaintiff had no past relevant work. AR 33. At step five, relying on testimony of a vocational expert (VE), and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 34. These jobs included production assembler (16,100 jobs in the national economy), small products assembler I (19,700 jobs in the national economy), sub-assembler (15,300 jobs in the national economy), and small products assembler II (17,400 jobs in the national economy). *Id.* The ALJ thus concluded that Plaintiff was not disabled. AR 35.

## DISCUSSION

Plaintiff argues that the ALJ erred in his decision in three ways. First, Plaintiff asserts that the ALJ erred by failing to consider whether Plaintiff's headaches met listing 11.02. Second, Plaintiff argues that the ALJ failed to provide clear and convincing reasons supported by substantial evidence when discounting Plaintiff's subjective symptom testimony. Third, Plaintiff argues that the ALJ failed to provide legally sufficient reasons supported by substantial evidence in rejecting the medical opinion of family nurse practitioner (FNP), Jennifer Stevens.

### A.  Step Three Error

The ALJ's opinion has a section titled: "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." AR 20. The ALJ discusses specific Listings in that section, and does not specify Listing 11.02. Plaintiff argues that the ALJ erred by failing to consider whether Plaintiff's migraines medically equaled Listing 11.02.

Defendant responds that it is Plaintiff's burden to show that her migraines meet a listing, Plaintiff fails to show that her headaches meet Listing 11.02, and the ALJ offered sufficient

discussion of Plaintiff's headaches for the Court to "find a basis for the step three finding" on Listing 11.02. The Commissioner cites *Lewis v. Apfel*, 236 F.3d 506, 512-13 (9th Cir. 2001) (holding that it is sufficient for an ALJ to conclude that the plaintiff does not have an impairment that meets or equals a listing in that section of his decision and "discuss and evaluate the evidence that supports his or her conclusion" in a different section of the opinion); *Kruchek v. Barnhart*, 125 F. App'x 825, 827 (9th Cir. 2005) (same); and *Connors v. Colvin*, 656 F. App'x 808, 810 (9th Cir. 2016) ("The ALJ did not include a discussion of the relevant rheumatoid arthritis evidence in the section of his [decision] dedicated to the listing analysis, but he did include a discussion of the relevant evidence later in his [decision]. Therefore, his analysis was procedurally proper").

Plaintiff asserts that the record contains evidence that her headaches meet or equal Listing 11.02. Headache disorders do not have their own listing. Instead, ALJs evaluate headache disorder claims under Listing 11.02, the listing for epilepsy. *See* Social Security Ruling (SSR) 19-4p, *available at* 2019 WL 4169635 (Aug. 26, 2019).

To equal Listing 11.02B, a claimant must have headache events "at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." *Id*. at *7. To equal Listing 11.02D, a claimant must have headache events "at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning." *Id*. To determine whether a claimant's symptoms are "equal in severity and duration to the criteria in 11.02B," the ALJ must consider:

> A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache

> disorder can produce drowsiness, confusion, or inattention); and
> limitations in functioning that may be associated with the primary
> headache disorder or effects of its treatment, such as interference
> with activity during the day (for example, the need for a darkened
> and quiet room, having to lie down without moving, a sleep
> disturbance that affects daytime activities, or other related needs
> and limitations).

*Id*.

In discussing Plaintiff's RFC, the ALJ evaluated Plaintiff's headaches. AR 24-25. In so doing, the ALJ identified inconsistencies between the "Migraine Headache Form" completed in June 2020 by Jennifer Stevens FNP and her corresponding treatment notes. The ALJ found that despite FNP Stevens' assertion that Plaintiff's headaches were disabling, the record demonstrated "few reports of significant or persistent headaches to providers and no significant changes in treatment for headaches." AR 24. The ALJ also discussed FNP Stevens' observation that Plaintiff had a fair response to treatment. *Id*. (citing AR 551-53). Next, the ALJ acknowledged Plaintiff's complaints to providers about her severe and daily headaches, citing chart notes. *Id.* The ALJ also pointed out, however, that her providers did not note pain behaviors during Plaintiff's appointments and that they prescribed only routine treatment, citing many records. *Id.* (citing, *e.g.*, AR 604 (3/1/2020 chart note where Plaintiff's review of systems was "[n]egative for headaches"); AR 898, 941, 1337,[3] 1364 (9/17/2020, 10/9/2020, 11/19/2021 and 7/30/2021 chart notes describing Plaintiff's "[d]ifficulty walking, [d]izziness, and [h]eadache" as negative); AR 1372, 1379 (11/6/2020 and 11/13/2020 chart notes describing Plaintiff as "awake, alert, and oriented x3, sitting in my office in no acute distress. Well appearing with a pleasant affect.").

---

[3] The ALJ cited AR 1338, the adjacent page to the relevant text, which the Court considers a typographical error.

Plaintiff fails to demonstrate a conclusive three-month period where she had headache events "at least once a week for at least 3 consecutive months despite adherence to prescribed treatment[,]" or "at least once every 2 weeks for at least 3 consecutive months[.]" SSR 19-4p, 2019 WL 4169635, at *7. For example, Plaintiff was negative for "[d]ifficulty walking, [d]izziness, and [h]eadache" on October 9, 2020, AR 941, but was positive for headache on December 8, 2020. In 2021, Plaintiff was positive for headache on May 4, 2021, AR 1025, but then presented negative for headache during a visit with her orthopedist on July 30, 2021. AR 1985; *but see* AR 1364-65 (7/30/2021 neurological system review noting headaches without temporal limitation, but with current pain scale listed as 0 out of 10). The ALJ took note of these inconsistencies and concluded:

> [T]he undersigned is not persuaded that [Plaintiff]'s headaches would prevent her from maintaining productivity or attendance within the tolerances of competitive employment at a fulltime job performing simple tasks.

AR 25. Substantial evidence supports this conclusion. Plaintiff fails to meet her burden of establishing that her migraine headaches meet listing 11.02.

As for Plaintiff's argument that the ALJ erred by failing to specifically address Listing 11.02, "an ALJ is not required to explicitly discuss a listing where it may be implied from the ALJ's decision that he found that the claimant did not meet the listing in question and that finding is supported by substantial evidence." *Tubbs v. Berryhill*, 2017 WL 1135234, at *6 (S.D. Ala. Mar. 27, 2017) (citing cases). As explained by the Southern District of Florida in a factually similar case,

> As discussed above, that the ALJ failed to specifically discuss whether Ms. Musgrave's migraine headaches met a Listing does not impact this outcome. *See Hutchison*, 787 F.2d at 1463 ("While Appendix 1 must be considered in making a disability determination, it is not required that the [ALJ] mechanically recite the evidence leading to her determination. There may be an

> implied finding that a claimant does not meet a listing."). The ALJ
> made an express finding that Ms. Musgrave did not meet any
> Listing and an implied finding that Ms. Musgrave did not meet
> Listing 11.02. (R. 39-41). Although the ALJ did explain in detail
> why some of Ms. Musgrave's severe visual and mental
> impairments failed to meet specific listings (i.e., Listings §§ 2.04,
> 12.04, and 12.06) (R. 40-41), he was not required to cite all the
> evidence he considered or specify why each of Ms. Musgrave's
> severe or non-severe impairments, including the migraine
> headaches, did not meet a Listing. *See Hutchison*, 787 F.2d
> at 1463.

*Musgrave v. Kijakazi*, 2023 WL 2838127, at *12 (S.D. Fla. Feb. 6, 2023) (applying the law of

the Eleventh Circuit, which is similar to the Ninth Circuit), *report and recommendation*

*adopted*, 2023 WL 2707376 (S.D. Fla. Mar. 30, 2023); *see also Melissa Kathleen B. v.*

*Kijakazi*, 2022 WL 447232, at *7 (D. Minn. Jan. 27, 2022) ("The ALJ did not explicitly analyze

whether Plaintiff's impairments met or equaled listing 11.02 at step three, but that finding is

implicit in the analysis."), *report and recommendation accepted*, 2022 WL 445822 (D. Minn.

Feb. 14, 2022); *Richardson v. Berryhill*, 2017 WL 4172628, at *5 (S.D. Ga. Aug. 28, 2017)

("Moreover, the ALJ's implied determination that Plaintiff did not meet listing 11.02 is

supported by substantial evidence."), *report and recommendation adopted*, 2017 WL 4125271

(S.D. Ga. Sept. 18, 2017).

      Like these cases, although the ALJ did not specifically address Listing 11.02, the ALJ

found that Plaintiff did not meet any listing and evaluated and discussed Plaintiff's headaches

with sufficient specificity for the Court to review the ALJ's conclusion in the RFC analysis

section. The Ninth Circuit does not require that an ALJ's analysis supporting the listing

conclusion be in the same section. *Lewis*, 236 F.3d at 513. Thus, the ALJ did not err.

**B.  Plaintiff's Subjective Symptom Testimony**

    **1.  Legal Standards**

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." Social Security Ruling (SSR) 16-3p, *available at* 2017 WL 5180304, at *6 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when

evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *7-8.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2.  Reviewable Reasons Given by the ALJ

In making his finding, the ALJ offered the boiler plate statement that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons

explained in this decision." AR 23. The ALJ began by noting that Plaintiff originally claimed she

was disabled in her prior adjudication during a time when she also stated that she could perform

regular lifting was an apparent inconsistency that "suggests that some of the claimant's

statements about her medical conditions and related limitations are not entirely reliable." AR 24.

The ALJ then separately assessed Plaintiff's testimony about her headaches, musculoskeletal

disorders, asthma, obesity, and mental impairments. AR 24-28. The ALJ followed that

discussion, however, with sections discussing Plaintiff's "inconsistent and unsupported

statements" and "activities of daily living." AR 28-30.

When an ALJ divides the analysis of testimony into distinct parts, the ALJ's reasoning

that is distinct to one part, such as that it is inconsistent with the objective medical evidence, can

only be considered for that aspect of the opinion. *See Dale v. Colvin*, 823 F.3d 941, 945 (9th

Cir. 2016). Reasons given by the ALJ to discount testimony in a section that "apply to a witness'

entire testimony," however, may be relevant to the "whole opinion." *Id.*

Plaintiff objects that the ALJ's analysis in the "headache" section is not clear and

convincing and supported by substantial evidence. The ALJ chose to divide his opinion into

Plaintiff's different alleged impairments in analyzing Plaintiff's testimony, and Plaintiff relies

only on her headaches as disabling for purposes of this appeal. The ALJ, however, also included

sections in his opinion that were generally applicable to all of Plaintiff's testimony, including her

daily living activities, her purportedly inconsistent statements, and her contentions during her last

adjudication. The Commissioner defends only the ALJ's analysis in the headache section and

daily living activities, and thus the Commissioner waives consideration of any other reason

provided by the ALJ.[4] Plaintiff, however, only challenged the ALJ's discussion in the "headache" section in Plaintiff's opening brief, without addressing daily living activities. Generally, failure to raise an argument in the opening brief waives the issue. *See Gutierrez v. Comm'r of Soc. Sec.*, 2024 WL 3275647, at *10 (E.D. Cal. July 2, 2024) (concluding that the claimant waived or forfeited arguments on the ALJ's reasons to discount the claimant's testimony not challenged in the opening brief); *Tamila H. v. Comm'r Soc. Sec. Admin.*, 2024 WL 448384, at *5 (D. Or. Feb. 6, 2024) ("Plaintiff does not specifically challenge the ALJ's discounting of her testimony based on evidence of improvement and effective treatment . . . . The Court agrees that if a claimant fails to raise a challenge in her opening brief, she waives that challenge."). But the Commissioner defended daily living activities without raising the argument of waiver, and Plaintiff responded in her reply. The Court thus concludes that the issue sufficiently was brought to the Court and daily living activities as well as the reasons articulated in the ALJ's "headache" section are reviewable.

### 3.  Analysis

#### a.  Daily Living Activities

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639.

---

[4] *See Suzanne M. v. Saul*, 2020 WL 13931887, at *6 (E.D. Wash. Apr. 6, 2020) ("Moreover, the Commissioner does not defend the ALJ's reliance on Plaintiff's indicated abuse of pain medications and therefore this waived reason cannot serve to support the ALJ's decision to discount Plaintiff's symptom reports."); *Kelly v. Colvin*, No. 14 C 1086, 2015 WL 4730119, at *5 (N.D. Ill. Aug. 10, 2015) ("The Court does not address the second and third of these factors because the Commissioner does not defend the ALJ's assessment on these grounds. That waives the ALJ's reliance on these factors.").

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be utterly incapacitated in order to be disabled." (quotation marks omitted)). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan*, 260 F.3d at 1050;

The ALJ noted that Plaintiff's original function report from May 2020 stated that she could engage in activities such as "preparing meals, doing light housework, driving, and shopping in stores." AR 29. The ALJ found that these activities suggest that Plaintiff can perform simple, routine tasks. The Court disagrees—these are the minimal activities the Ninth Circuit repeatedly chastises ALJs not to punish claimants for attempting to engage in. Further, doing such light tasks, intermittently, on a schedule in which a claimant can take breaks, lie down, or stop if needed, is not the same as engaging in simple and routine work for eight hours per day. This error, however, is harmless, given that the ALJ provided other reasons.

The ALJ next noted that Plaintiff's revised function report from March 2021 reports a significant decline in functioning. *Id.* The ALJ concluded that the record did not support such a decline because the medical evidence did not show a deterioration in Plaintiff's mental or physical symptoms, nor had Plaintiff reported or been observed having such difficulties. AR 29-

30. The ALJ also emphasized that (1) Plaintiff reported to a provider in March 2021 that her medication improved her daily functioning and to another provider that she was in a new relationship and doing "more activities"; (2) Plaintiff reported having a nice beach trip in August 2021; (3) Plaintiff was busy in August 2021 helping to plan her daughter's wedding; and (4) in early 2022, Plaintiff was helping "get things ready" for when her mother got out of the hospital.[5] AR 30. This is evidence supporting the ALJ's discounting Plaintiff's later function report.

### b. Other reasons

In the "headache" section of his opinion, the ALJ explained that he discounted Plaintiff's subjective reports regarding her limitations from headaches because: (1) Plaintiff was able to work 35 hours per week during her previous period of claimed disability despite having alleged disabling headaches; (2) a provider reported Plaintiff had "fair response" to treatment; (3) Plaintiff mostly had routine treatment for headaches until late 2021 despite consistently claiming she was disabled from headaches; and (4) the objective medical evidence did not support her claimed symptoms and limitations. Plaintiff argues that these reasons all equate to Plaintiff's limitations not being supported by the objective medical evidence, which Plaintiff then disputes by pointing to other evidence in the medical record. Plaintiff's argument is not an accurate characterization of the ALJ's reasoning. Improvement with treatment and routine

---

[5] The ALJ also stated that the record references Plaintiff "going on walks and exercising daily," AR 30, but the Court finds this a mischaracterization of the record. The record cited for "going on walks" actually states that Plaintiff "tries to take walks." AR 625. The record on Plaintiff's exercise is a repeated report from the same provider, stating in the "Lifestyle" section of Plaintiff's history "Moderate activity level. Exercises daily." AR 827, 1337, 1346, 1354, 1364, 1371, 1378. The Court views with skepticism this type of repeatedly autopopulated information.

treatment are not the same as a lack of support in the objective medical evidence, nor is the ability to work 35 hours while claiming disability.

The ALJ first addressed Plaintiff's previous ability to work 35 hours per week during a time when she claimed she suffered from disabling headaches. Plaintiff argues that this period is irrelevant because it predates Plaintiff's disability onset date in this claim, but the evidence is relevant in the context for which the ALJ considered it. Indeed, in *Ahearn v. Saul*, the Ninth Circuit considered historical evidence of ability to work from a time when a claimant contended he had similar limitations as during the relevant period from much further back from the alleged onset date. 988 F.3d 1111, 1117 (9th Cir. 2021). The Ninth Circuit was considering an SSI claim with an alleged disability onset date of October 1, 2010, *id.* at 1116, and considered evidence of the claimant's ability to work for nine months in 2002 in affirming the ALJ's assessment of the claimant's testimony. *Id.* at 1117. The court considered such historical evidence because the claimant testified that for "much of his life" he suffered from the same alleged disabling condition. *Id.*

The same is true of Plaintiff. She alleged that her headaches were disabling in her previous disability adjudication. AR 76-77. The ALJ found migraines to be a severe impairment, AR 74, but rejected that they were disabling. AR 80. Thus, during the period she was alleging disabling headaches, she was able to work. As in *Ahearn*, that is relevant evidence the ALJ could consider as clear and convincing evidence to discount Plaintiff's testimony.

Additionally, the amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).

Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Additionally, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

The ALJ first focused on Plaintiff's response to treatment and routine treatment earlier in the relevant period to discount Plaintiff's subjective testimony. This decision is supported by substantial evidence, particularly for Plaintiff's DIB claim. The ALJ then noted that Plaintiff had the more aggressive treatment of Botox injections late in 2021. This period is after the date last insured but is relevant to Plaintiff's SSI claim. The ALJ determined, however, that the other reasons he had discussed (the lack of objective medical evidence, Plaintiff's inconsistent reporting, and her previous ability to work) were more persuasive, and concluded that Plaintiff's headaches were not disabling. Substantial evidence also supports this conclusion by the ALJ. Plaintiff argues for a different interpretation of the record, but the ALJ's interpretation is rational, and thus must be upheld. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Finally, an ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). At the hearing and in her function report, Plaintiff discussed how she "wake[s] up with a headache every day that's a migraine." AR 53. Plaintiff

also claims her headaches last "all day[,]" but that her migraines "can be a couple hours to all day[.]" AR 53-54. The ALJ juxtaposed these claimed limitations with physical examination findings, particularly as not including observed pain behaviors by Plaintiff. AR 24-25, 29 (citing many examinations). These also included records showing that she presented "negative" for headaches at several different appointments. AR 24 (citing, *e.g.*, AR 604 (3/1/2020 chart note where Plaintiff's review of systems was "[n]egative for headaches"), AR 898, 941, 1337,[6] 1364 (9/17/2020, 10/9/2020, 11/19/2021 and 7/30/2021 chart notes describing Plaintiff's "[d]ifficulty walking, [d]izziness, and [h]eadache" as negative)).

The ALJ also cited Plaintiff's emergency room visit on February 23, 2021, to discount Plaintiff's claim that she has a headache every day, all day. *Id.* The ALJ noted that Plaintiff "described her headache as being for three days" and then concluded that this "implies that her headaches are intermittent, and not constant as alleged in her testimony." *Id.* Furthermore, the ALJ emphasized that Plaintiff did not again seek emergency treatment and that her treatment was limited to routine abortive medications until she tried Botox injections in late 2021. AR 24-25. The ALJ also cited what he considered as inconsistent reports to providers regarding the frequency of Plaintiff's headaches. AR 25

Plaintiff cites other medical records to argue that the ALJ's analysis is not supported by substantial evidence. Plaintiff also argues that lack of support by the objective medical evidence cannot be the "sole" reason an ALJ discounts testimony. The ALJ, however, gave several reasons, and his reasons are supported by substantial evidence. Plaintiff may have a different view of the medical record, and it may be rational, but the question is whether the ALJ's reasons are clear and convincing and supported by substantial evidence. They are.

---

[6] As previously noted, the ALJ erroneously cited AR 1338.

### C. Medical Opinions

#### 1. Legal Standards

Plaintiff filed her application on January 9, 2020. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. §§ 404.1520c and 416.920c governs how an ALJ must evaluate medical opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. §§ 404.1520c(c); 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. §§ 404.1520(c)(1); 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. 20 C.F.R. §§ 404.1520c(c)(3); 416.920c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical

factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. §§ 404.1520(c)(3); 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b); 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." (citation omitted)).

### 2. Jennifer Stevens, FNP

Between April 29, 2019, and March 1, 2022, FNP Stevens treated Plaintiff on several occasions for various health issues. AR 2301-2598. On June 18, 2020, FNP Stevens provided a "Migraine Headache Form" evaluating the extent of Plaintiff's headache symptoms. AR 551-52.

In the "Migraine Headache Form," FNP Stevens stated that Plaintiff gets headaches three-to-four times per week, and that they last two-to-six hours. AR 551. FNP Stevens indicated that Plaintiff experiences photophobia, phonophobia, and that her symptoms are throbbing or pulsating. *Id*. FNP Stevens also stated that Plaintiff uses Maxalt and Gabapentin to treat her headaches, with a "fair" response to them. *Id*. Lastly, FNP Stevens opined that Plaintiff's migraines would interfere with her ability to work and that she would miss one day per week due to her migraines. *Id*.

The ALJ concluded that the limitations opined by FNP Stevens' were not persuasive because her "treatment notes provide little support for her opinions" and the limitations were inconsistent with the objective medical evidence of record. AR 32-33. An ALJ may discount a medical source opinion if it is not supported by her treatment notes. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (stating that an ALJ may discount medical opinions that are "inadequately supported by clinical findings" (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002))); 20 C.F.R. § 404.1520c(c)(1) (including among the "supportability" factors "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)").

Substantial evidence supports the ALJ's conclusion that FNP Stevens' records do not contain clinical findings sufficient to support the severe limitations contained in her opinions regarding Plaintiff's headaches. In the months prior to FNP Stevens completing the "Migraine Headache Form," her treatment notes indicate that Plaintiff presented "[n]egative for headaches" and mostly discussed other health concerns, such as her meniscus tear or shoulder and knee pain. *See* AR 604, 606-07. The ALJ also found FNP Stevens' opinion that Plaintiff would miss work on a weekly basis to be at odds with FNP Stevens' observation on the form of Plaintiff's "fair" response to her prescribed treatment. AR 32.

The ALJ also referenced a physical health residual functional capacity assessment completed for Plaintiff by FNP Stevens. AR 32 (citing AR 2604-07). This assessment included only one sentence that addresses headaches, "change will also trigger migraines, seizures and panic attacks[.]" AR 2606. None of FNP Stevens' treatment notes, however, support or explain this limitation. This assessment also contained significant limitations relating to lifting, standing, walking, sitting, reaching, and other functional categories, which the ALJ noted did not have

support in FNP Stevens' records. The Court agrees. Thus, the ALJ reasonably discounted FNP Stevens' opinion, as her treatment records did not comport with the extreme limitations in her opinions.

An ALJ also may reject medical source opinion evidence that is inconsistent with other medical opinions of record, or inconsistent with the objective medical evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (concluding that the ALJ did not err in rejecting a medical opinion that was inconsistent with objective medical evidence and another medical opinion of record); 20 C.F.R. § 404.1520c(c)(2) (explaining that the "consistency" prong evaluates how consistent an opinion "is with the evidence from other medical sources"). The ALJ found that FNP Stevens' limitations conflicted with the clinical findings on physical exam found by Plaintiff's other providers. AR 33. Plaintiff argues that the ALJ committed a fatal error because FNP Stevens' medical opinion was actually *consistent* with reports by Plaintiff to other providers that she regularly suffers from headaches. The ALJ, however, focused on the lack of observed pain behaviors and other more objective medical evidence. Additionally, what Plaintiff argues for is a different interpretation of the medical record, when the ALJ's interpretation is rational and supported by substantial evidence.

Here, the ALJ cited physical examinations from Plaintiff's orthopedist, neurologist, and physical therapist that demonstrate that Plaintiff failed to report headaches, did not display pain behavior surrounding her headaches, and many times presented as "negative" for headaches on physical examination. AR 24 (citing several examinations). The ALJ found these physical examination findings to be at odds with FNP Stevens' opinion that Plaintiff would miss work on a weekly basis. AR 33. The ALJ was within his discretion to determine that there was an inconsistency between the providers' clinical examination findings.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 23rd day of September, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge